## HORTON v McDERMOTT.

Circuit Court, Palm Beach County.

May 25, 1957.

Robert F. Griffith, Jr., Boynton Beach, for plaintiff.

Robert M. Curtis, Fort Lauderdale, for defendant.

JAMES R. KNOTT, Circuit Judge.

A directed verdict having been entered for the defendant herein, this cause is now before the court upon motions of the plaintiff for judgment non obstante veredicto and for new trial, and upon defendant's motion for taxation of costs against plaintiff.

The evidence at the trial showed that defendant Lillian M. McDermott agreed to sell certain property owned by her in Palm Beach County to one Paul McBride, and to pay the plaintiff, her real estate broker, the usual commission for his services in obtaining a purchaser. Before the sale was consummated, the defendant repudiated her agreement and sold the property to a third party. The present action was then brought by the broker against the defendant for the amount of the commission which would have been payable to the broker had the defendant complied with her agreement and conveyed the property to McBride. The defendant in her

answer alleged, and the evidence showed, that a certain real estate salesman in the employ of the plaintiff was one of three persons who were the actual intended purchasers of the property, although the name of only one of them, McBride, appeared on the sales contract. The interest of the salesman as one of the intended purchasers was not disclosed to the defendant seller at the time she agreed to sell to McBride.

The evidence failed to show any actual fraud or bad faith on the part of the plaintiff broker or by his salesman who was financially interested in the purchase, or that any damage or injury to the defendant resulted from the fact that the salesman was one of the intended purchasers. The salesman had known that the property was for sale before he became employed by the plaintiff broker. The question is presented as to whether the defendant may under such circumstances repudiate the transaction and avoid liability for the brokerage commission which would ordinarily be payable.

The rule in such cases appears to be well settled—

"The general rule is that a broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances, acquiesces in such a course. The reason is that it is inconsistent for one to act as principal in his own behalf while in duty bound to act as the agent of another, for in the latter capacity he is bound to exercise his best skill and labor and a high degree of fidelity and good faith to secure for his principal the best bargain possible, even though his own conflicting interests at the same time impel him to do just the opposite and thereby gain the most advantageous terms for himself.

"This rule applies in all cases alike, and not merely to those where the broker has been guilty of fraudulent conduct. It is applicable where the employment is to sell at a fixed or specified price, as well as a net or minimum price. It should be noted in this connection that the general rule applies not only to the broker himself but to his employees and subagents as well ***." 8 Am. Jur., Brokers, Sec. 91.

"The facts that no actual fraud has been practised, no damage has resulted, and no bad faith has been exercised, in a transaction in which the agent has acted in a dual capacity, do not make the contract valid, in the absence of knowledge on the part of the principal of all the material facts." 2 Am. Jur., Agency, Sec. 262.

The application of the well recognized principles of law set forth above has a harsh result in the present case, since, as noted above, there is no showing of bad faith on the part of the broker or his salesman, nor is it indicated that the interest of the salesman in the transaction constituted a reason for defendant's repudiation of her agreement to sell the property; in fact, it was not shown that the defendant had learned of the salesman's interest at the time she repudiated the agreement. Nevertheless, the law does not permit an exception to the general rule even under those circumstances. It follows that the defense interposed by the defendant must be held valid.

"Actual injury is not the principle upon which the law holds such transactions voidable; the law holds them voidable in order to prevent the agent from putting himself in a position where he will be tempted to betray his principal."

2 Am. Jur., Agency, Sec. 265.

The said motions of the plaintiff must be and the same are severally denied, and defendant's motion for taxation of costs against plaintiff in the amount of 45 cents is granted.